Beno **VARGHESE** et al., Plaintiffs,

v.

**CHINA SHENGHUO PHARMACEU- TICAL HOLDINGS, INC.** et al., Defendants.

No. 08 Civ. 7422(VM).

United States District Court, S.D. New York.

Dec. 10, 2008.

Catherine A. Torell, Cohen, Milstein, Sellers & Toll, P.L.L.C., Laurence Matthew Rosen, Phillip C. Kim, The Rosen Law Firm, P.A., New York, NY, for Plaintiffs.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

By motion dated October 22, 2008, plaintiff William R. Bennett ("Bennett") moved the Court (1) to be appointed lead plaintiff in this action; and (2) to approve his choice of counsel, Cohen, Milstein, Sellers & Toll, P.L.L.C. ("Cohen Milstein"), as lead counsel for all plaintiffs in the proposed class (the "Class"). Also by motion dated October 22, 2008, plaintiffs Matthew Chia–Yiu Maa ("Maa"), David Dai, Shawn Rad, and Mohammad Khan (collectively, the "Maa Group"), moved the Court (1) to individually and collectively be appointed lead plaintiffs; and (2) to approve their choice of counsel, The Rosen Law Firm, P.A. ("Rosen"), as lead counsel. Finally, by motion dated October 22, 2008, Gordon Chace ("Chace") moved the Court (1) to be appointed lead plaintiff; and (2) to approve his choice of counsel, Johnson Bottini, LLP, as lead counsel. For the reasons stated below, Bennett's motion is GRANTED, and the Maa Group's and Chace's motions are DENIED.

### I. BACKGROUND [1]

The claims in this class action arise out of alleged violations of federal securities laws by defendant China Shenghuo Pharmaceutical Holdings, Inc. ("CSP") between July 23, 2007 and August 20, 2008 (the "Class Period").

CSP develops products derived from herbs to treat a myriad of health conditions, ranging from cardiovascular disease to the common cold. CSP is a publicly held company whose common stock (1) was and is registered with the United States Securities and Exchange Commission ("SEC"); (2) was traded on the American Stock Exchange ("AMEX") until August 20, 2008; and (3) was and is governed by United States federal securities law.

On August 20, 2008, CSP issued a press release stating that its financial statements

---

[1]. The factual and procedural summary provided below is derived primarily from the following documents: Class Action Complaint, dated August 21, 2008 ("Complaint"); Memorandum of Points and Authorities in Support of William Bennett's Motion to Be Appointed Lead Plaintiff and to Approve His Choice of Lead Counsel, dated October 22, 2008 ("Bennett Mem."); Memorandum of Law in Support of Motion of the Maa Group to: (1) Appoint Lead Plaintiffs; and (2) Approve Lead Plaintiffs' Selection of Counsel, dated October 22, 2008 ("Maa Group Mem."); Memorandum of Law in Support of Gordon Chace's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, dated October 22, 2008 ("Chace Mem."); William R. Bennett's Memorandum of Law in Opposition to Competing Lead Plaintiff Motions, dated November 10, 2008 ("Bennett Opp."); The Maa Group's Memorandum of Law in Opposition to Competing Lead Plaintiff Motions, dated November 10, 2008 ("Maa Group Opp."). Except where necessary, no further citation to these documents will be made.

for the periods ended June 30, September 30, and December 30, 2007, and the fiscal quarter ended March 31, 2008, contained accounting errors and should not be relied on until CSP issued a financial restatement for those quarters. This disclosure allegedly prompted CSP common stock to lose 19 percent of its value on that day, closing at $1.89 per share. The AMEX halted the sale of the stock at closing on August 20, 2008, and trading on CSP common stock currently remains halted.

In a complaint dated August 21, 2008 and filed in this Court, plaintiff Beno Varghese ("Varghese"), individually and on behalf of all others similarly situated, alleges that CSP's actions during the Class Period violated §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, resulting in damages to himself and others in the Class.[2] On August 23, 2008, Varghese's counsel issued a notice (the "Notice") informing potential Class members of: (1) the allegations and claims contained in the Complaint; (2) the purported Class Period; and (3) their opportunity to move the Court to serve as lead plaintiff within sixty days, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Class members Bennett, the Maa Group, and Chace each moved the Court for appointment as lead plaintiff(s) and to have their respective choice of counsel approved as lead counsel.

## II. DISCUSSION

### A. LEGAL STANDARD

The PSLRA provides the standard for selecting a lead plaintiff in class actions brought pursuant to the Securities Exchange Act. The PSLRA directs that:

the court shall adopt a presumption that the most adequate plaintiff in any pri-

vate action arising under this chapter is the person or group of persons that—

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

The Court's identification of the presumptively most adequate lead plaintiff may be rebutted if class members offer evidence that the presumptive lead plaintiff: (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

### B. THE MOTIONS UNDER CONSIDERATION ARE TIMELY

Varghese published the Notice on August 23, 2008. Bennett, the Maa Group, and Chace filed their respective motions on October 22, 2008. The movants' motions all satisfy the requirement that such motions be filed within sixty days of the Notice's publication. *See id.* § 78u–4 (a)(3)(A)(i)(II). All three movants therefore satisfy § 78u–4(a)(3)(B)(iii)(I)(aa).

### C. BENNETT HAS THE LARGEST FINANCIAL INTEREST IN THE RELIEF SOUGHT BY THE CLASS

1. *The Maa Group Is Not an Appropriate Candidate for a Group of Lead Plaintiffs*

Though the PSLRA expressly permits a "person or group of persons" to be ap-

---

**2.** The Court entered an Order on September 26, 2008 consolidating this action with a similar class action, *Yu v. China Shenghuo Pharmaceutical Holdings, Inc.*, No. 08 Civ. 8168 (S.D.N.Y.).

pointed lead plaintiff, 15 U.S.C. § 78u–4(a)(3)(b)(iii)(I), the PSLRA does not define what a "group" can or should be, nor how its "members" must be related to one another. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y.2005) ("[T]he [PSLRA] does not specify whether the 'members' must be related in some fashion in order to qualify as an appropriate lead plaintiff group.").

■ Historically, district courts have been divided over whether a group of unrelated investors constitutes a "group of persons" that may be appointed lead plaintiff. *See id.*; *In re Star Gas Sec. Litig.*, No. 3:04 CV 1766, 2005 WL 818617, at *4 (D.Conn. Apr. 8, 2005) (noting that some courts forbid the aggregation of unrelated plaintiffs while other courts accept a proposed group of lead plaintiffs without scrutiny). The majority of courts, including those in this District, have adopted an intermediate position, permitting unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class. *See, e.g., In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y.1998) ("Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case.").

■ Accordingly, a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs. Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa. *See, e.g., Freudenberg v. E\*Trade Fin. Corp.*, Nos. 07 Civ. 8538 et al., 2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008) (permitting proposed group whose members "submit that they have a longstanding pre-litigation relationship and a clear understanding as to consultation, information sharing, and management of the litigation"); *Reimer v. Ambac Fin. Group, Inc.*, Nos. 08 Civ. 411 et al., 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (proposed group held joint conference calls to formulate strategy); *c.f. In re Nature's Sunshine Prods., Inc.*, No. 2:06–CV–267 TS, 2006 WL 2380965, at *1 (D.Utah Aug. 16, 2006) (proposed group submitted affidavits demonstrating cooperative efforts and did not combine at the last minute); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00–3605, 2000 WL 33173017, at *4 (D.N.J. Nov. 16, 2000) (proposed group submitted declarations advising of members' sophistication, involvement in the litigation thus far, and plans for future meetings and protocol to determine activity in the event of disagreement among group members). In short, the proposed group must "evince[] an ability (and a desire) to work collectively to manage the litigation." *Reimer*, 2008 WL 2073931, at *3.

However, courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action. *See, e.g., In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972, 2007 WL 4302732, at *1

(S.D.N.Y. Dec. 6, 2007) (rejecting applications from two groups that provided no evidentiary basis for aggregation other than that each was represented by a set of lawyers, and "no evidence that the members of these groups have ever communicated with other members of their respective group or will do so in the future"); *Goldberger v. PXRE Group, Ltd.,* Nos. 06–CV–3410 et al., 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) (rejecting proposed group that "shares only this lawsuit in common" and suspecting the group was the result of the "type of lawyer-driven action that the PSLRA eschews"); *In re Doral Fin. Corp. Sec. Litig.,* 414 F.Supp.2d 398, 401–02 (S.D.N.Y.2006) (rejecting groups of unrelated investors, stating that "by allowing attorneys to designate otherwise unrelated plaintiffs as a purported 'group,' and by allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation"); *In re Pfizer Inc. Sec. Litig.,* 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (rejecting request to aggregate when "[n]othing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA"); *In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304, 308 (S.D.N.Y.2001) (rejecting proposed group because it "is simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff'"); *c.f. Eichenholtz v. Verifone Holdings, Inc.,* No. C 07–06140 MHP, 2008 WL 3925289, at *9 (N.D.Cal. Aug. 22, 2008) (rejecting proposed group of claimed "sophisticated institutional investors" because "the constituent members of the ... Group have not shown how and when they were joined together, how they intend to conduct dis-covery or how they will coordinate litigation efforts and strategy").

This skepticism is consistent with core aims of the PSLRA: shifting control of the litigation from the lawyers to the investors and preventing "the manipulation by class action lawyers of the clients whom they purportedly represent." H.R. Conf. Rep. 104–369, at 31, as reprinted in 1995 U.S.C.C.A.N. 730, 730; *see also In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157–58 (S.D.N.Y.1997) ("One of the principal legislative purposes of the [PSLRA] was to prevent lawyer-driven litigation.... To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.").

Judge Castel succinctly summarized the state of the law in this District as follows:

> The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may. But to enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers.

*In re Tarragon,* 2007 WL 4302732, at *2 (citation omitted).

■ The Court need not delve into the various case-by-case analyses that courts have employed when evaluating whether a proposed group of unrelated investors is suitable for appointment as lead plaintiffs, because the Maa Group fails to provide the Court with any evidence that its members have had any prior pertinent relationships or cooperative efforts, or that they will act collectively and separately from their lawyers.

The Maa Group is composed of four individual plaintiffs who allegedly pur-

chased stock during the Class Period and suffered damages as a result of CSP's violation of securities laws. Aside from the Maa Group's conclusory assertion that it "is small and cohesive so that coordinated decision making should not present any difficulties" (Maa Group Mem. at 5), it provides no evidentiary support attesting to its ability to work together and oversee the litigation apart from its lawyers. The Maa Group does not describe how or why the group was formed, how its members will work together to manage the litigation, whether a pre-litigation relationship existed between its members, or any other information about how such aggregation would benefit the class. The Maa Group does not inform the Court whether its members have ever communicated with each other or plan to do so in the future, or if they are even aware of each other's existence. Indeed, the only submissions provided to the Court about the group members' interests and involvement in the litigation thus far are boilerplate certifications signed and dated by each group member—certifications which are incomplete, as the members' addresses, telephone numbers, and e-mail addresses are absent. (Declaration of Phillip Kim in Support of Motion of the Maa Group to: (1) Appoint Lead Plaintiffs; and (2) Approve Lead Plaintiffs' Selection of Counsel, Ex. 2.) Such a meager evidentiary showing cannot satisfy the Court that the Maa Group has adequately demonstrated that its members will act collectively and separately from their lawyers.

In denying the aggregation of the Maa Group as suitable lead plaintiffs in this action, the Court does not intimate that the Maa Group's counsel has intentionally aggregated unrelated plaintiffs for the purpose of artificially creating a group with the greatest financial interest. Nevertheless, the Court finds that absent any evidentiary showing by the Maa Group of its members' ability to work cohesively together to effectively manage the litigation apart from their lawyers, aggregation of its members' financial interests for purposes of appointing lead plaintiff is inappropriate.

While the Court rejects the aggregated Maa Group's motion as lead plaintiffs, the Court may consider Maa, the largest shareholder of the Maa Group, individually, as if he had moved to be appointed as lead plaintiff alone. *See, e.g., Eichenholtz v. Verifone Holdings, Inc.*, No. C 07–06140 MHP, 2008 WL 3925289, at *10 (N.D.Cal. Aug. 22, 2008) (rejecting proposed group, yet considering individual entity); *In re Network Assoc., Inc., Sec. Litig.*, 76 F.Supp.2d 1017, 1027 (N.D.Cal.1999) ("Artificial aggregation of the type here proposed should never be allowed.... Therefore, the Court will attempt to identify the single candidate with the largest financial interest in the litigation and vet that candidate against the requirements of the PSLRA."); *Donnkenny*, 171 F.R.D. at 158 (appointing individual entity as lead plaintiff after denying the motion of its larger group).

### 2. Comparing the Financial Interests of Bennett, Maa, and Chace

The Court must determine next whether Bennett, Maa, or Chace has the "largest financial interest in the relief sought by the class" of those seeking to serve as lead plaintiff in this litigation. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

 Though the PSLRA offers no guidance as to how to measure which proposed plaintiff has the "largest financial interest," courts in this District overwhelmingly rely on the factors derived from *Lax v. First Merch. Acceptance Corp.*, Nos. 97 C 2715 et al., 1997 WL 461036, at *5 (N.D.Ill. Aug. 11, 1997), and *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y.1998), to evaluate who

has the greatest financial interest. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y.2008). The *Lax/Olsten* factors include:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period)/ (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y.2007) (citations omitted). Financial loss, the last factor, is the most important element of the test. *See Reimer*, 2008 WL 2073931, at *3 ("The fourth factor is viewed as the most important."); *In re Fuwei Films*, 247 F.R.D. at 437 ("This Court, like many others, 'shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.'" (*quoting Kaplan*, 240 F.R.D. at 93)).

At the outset, it is clear that Chace cannot establish the largest financial interest in this action. Chace purchased 5,350 shares of CSP stock during the Class Period at a cost of $27,592.80. (Declaration of Jacqueline Sailer in Support of Movant Gordon Chace's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, Ex. B.) He sold 1,753 CSP shares during the Class Period for $6,523.69, and thus holds 3,597 shares at a net expense of $21,069.11. (*Id.*) Finally, Chace claims approximate losses of

$15,277.94.[3] (*Id.*) Compared to Bennett and Maa, who are discussed in detail below, Chace bought the fewest total shares and net shares, expended the least net funds, and suffered the least approximate losses. The Court therefore finds that Chace does not have the largest financial interest in this action and should not be appointed as the presumptive lead plaintiff. This leaves the Court to consider Maa and Bennett.

■ During the Class Period, Maa purchased a total number of 70,000 shares of CSP stock at a cost of $268,506.72. (Maa Group Mem. at 5.) He sold 30,000 shares during the Class Period for $146,664.14, and thus still holds 40,000 shares at a net expense of $121,842.58. (*Id.*) Bennett purchased 26,064 of CSP stock during the Class Period at a cost of $254,604.62. (Declaration of Catherine A. Torell in Support of William Bennett's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Torell Decl."), Ex. B.) Bennett did not sell any of his CSP shares during the Class Period, and thus still holds all 26,064 shares at a net expense of $254,604.62. (*Id.*) Based upon these submissions, the first two factors favor Maa, as he purchased more total shares and net shares during the Class Period. The third factor, however, favors Bennett, as he expended net funds of $254,604.62 during the Class Period, compared to Maa's expended net funds of $121,842.58.

The fourth factor, however, is the most important, and Bennett and Maa dispute the proper method of calculating the approximate losses each of movant suffered. Maa urges the Court to assign CSP stock

---

**3.** Whether the Court applies a valuation of $0.00 per share (resulting in approximate losses of $21,069.11), $1.89 per share (resulting in approximate losses of $14,270.89), or $1.61 per share, the price proposed by Chace (resulting in approximate losses of $15,277.94), Chace will have suffered the least approximate losses compared to Bennett and Maa.

a value of $0.00 per share because CSP's "stock is halted and the shares are virtually worthless."[4] (Maa Group Mem. at 5.) Bennett argues that the Court should assign CSP stock a value of $1.89 per share, as that was the last quoted trading price.[5] (Bennett Opp. at 3.)

While the Court finds problems with both proposed methods, the Court need not resolve the proper formula for calculating the approximate losses suffered in this case, as Bennett has suffered greater losses under both proposed valuations.[6] Employing a valuation of $1.89 per share, Bennett's losses total $205,343.66 and Maa's losses total $46,278.58. (Bennett Opp. at 4.) Employing a valuation of $0.00 per share, Bennett's losses total $254,604.62 and Maa's losses total $121,842.58. (Torell Decl., Ex. B; Maa Group Mem. at 5.) Accordingly, applying either suggested formula, Bennett has suffered greater approximate losses than Maa.

While the first two factors favor Maa and the third factor favors Bennett, the fourth factor in this case—the most important factor—strongly favors Bennett. Because Bennett has suffered greater approximate losses, he has the largest financial interest in the relief sought by the Class as determined by the *Lax/Olsten* test. Therefore, pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), Bennett shall be adopted by this Court as the presumptive plaintiff if he otherwise satisfies Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").[7]

**4.** The Court is not aware of, nor does the Maa Group direct the Court to, any case in which a court determined whether it is appropriate to employ a $0.00 value per share to calculate approximate losses related to halted stock. Rather, the Maa Group cites to a brief prepared by Cohen Milstein in a separate action, where Cohen Milstein wrote, "As a result of the fraud ... shares have not been traded in the open market.... Given the illiquid nature of these shares, Movants have ascribed $0 per share to approximate the value of their retained shares." (Maa Group Opp. at 3; Declaration of Phillip Kim in Opposition to Competing Lead Plaintiff Motions, Ex. 1 at 3 n. 3.) In that case, in determining which movant suffered the greatest approximate loss, the Court did not evaluate whether $0.00 per share would be an appropriate method for measuring loss, as it decided that the lead plaintiff suffered the greatest approximate loss under any of the proposed methods of valuation. *See Miller v. Dyadic Int'l, Inc.,* No. 07–80948–CIV, 2007 WL 4754041, at *2 (S.D.Fla. Dec. 14, 2007).

**5.** Bennett bases his argument on 15 U.S.C § 78u–4(e)(1), contending that the PSLRA mandates that the Court employ " 'the mean trading price of that security during the 90–day period' after the corrective disclosure." (Bennett Opp. at 3.) Bennett is mistaken: § 78u–4(e)(1) addresses the PSLRA's limitation on damages, not the methodology for determining a proposed lead plaintiff's financial interest in the relief sought. *See In re Ribozyme Pharms., Inc. Sec. Litig.,* 192 F.R.D. 656, 661–62 (D.Colo.2000) ("[T]he determination of financial interest does not equate to damages. Damages is a term of art and a technical matter to be established by experts. The lead plaintiff provision in the PSLRA does not use the term Marriages' but instead, 'largest financial interest.' ... I hold, therefore, that 'damages' under the PSLRA is not the proper test to determine largest financial interest.").

**6.** The parties' submissions present the two most extreme prospects—the highest and lowest applicable valuations. While the Court believes that the most accurate valuation lies somewhere between $0.00 and $1.89 per share, the Court need not propose a third price per share. Any valuation between $0.00 and $1.89 will result in Bennett having greater approximate losses than Maa.

**7.** If Bennett does not satisfy the criteria of Rule 23, the Court must repeat the Rule 23 inquiry, this time considering the plaintiff with the next-largest financial stake. The Court so proceeds until it finds a plaintiff who is willing to serve and is able to satisfy the requirements of Rule 23. *See In re Cavanaugh,* 306 F.3d 726, 730 (9th Cir.2002).

### D. BENNETT OTHERWISE SATISFIES THE REQUIREMENTS OF RULE 23

The final requirement for selecting a lead plaintiff, that the candidate "otherwise satisfies the requirements of Rule 23," 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc), is not in contention here. Rule 23 states that a party may serve as class representative only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

■ At this stage in the litigation, a prima facie showing that the requirements of Rule 23 are met is sufficient. *See In re Fuwei Films*, 247 F.R.D. at 437 ("At this point, a prospective lead plaintiff need only make a preliminary, prima facie showing that his or her claims satisfy the requirements of Rule 23." (*citing Kaplan*, 240 F.R.D. at 94)). Further, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *Id.*; *see also Kuriakose v. Federal Home Loan Mortgage Co.*, No. 08 Civ. 7281, 2008 WL 4974839, at *4 (S.D.N.Y. Nov. 24, 2008) ("In a motion to be appointed as lead plaintiff, a class member need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." (citation omitted)).

Bennett's claims are typical of the class. Like other Class members, he alleges that (1) he purchased CSP stock during the Class Period; (2) he purchased shares in reliance on CSP's misrepresentations; and (3) he suffered damages as a result. (Bennett Mem. at 7.) *See Reimer*, 2008 WL 2073931, at *4 ("[Typicality] is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." (*quoting In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992))).

■ Further, based on the memoranda and declarations submitted by Bennett's counsel, the Court is persuaded that Bennett has made a preliminary showing that he will adequately protect the interests of the Class. He is represented by experienced and qualified attorneys; the Court is not aware of any interests Bennett may have that are antagonistic to those of other Class members; and he has a significant financial interest in the outcome of action. *See Kuriakose*, 2008 WL 4974839, at *4 (in examining adequacy, "the Court scrutinizes (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims" (*quoting Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y.2004))).

Bennett therefore satisfies all three requirements of 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I): He made a motion in response to a notice; he has the largest financial interest; and he made a preliminary showing that he otherwise satisfies the requirements of Rule 23. Accordingly, Bennett is entitled to a rebuttable presumption that he should be appointed lead plaintiff in this action.

### E. BENNETT'S PRESUMPTIVE STATUS HAS NOT BEEN REBUTTED

Bennett's status as the presumptively most adequate plaintiff:

may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff—

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Neither the Maa Group nor Chace have proffered any "proof" challenging Bennett's presumptive status on these bases, and the Court is not aware of any unique or potentially prevailing defenses that may be asserted against Bennett, nor any other reason that would make Bennett unable to fairly and adequately protect the Class. Bennett is therefore appointed lead plaintiff in this action.

F. *APPROVAL OF LEAD COUNSEL*

 The PSLRA instructs that upon appointing a lead plaintiff, he or she "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). "The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (*quoting In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir.2001)). Bennett has selected Cohen Milstein as lead counsel, a representative of which has submitted a declaration setting forth the firm's extensive experience in prosecuting securities fraud actions. (Torell Decl., Ex. C.) Accordingly, the Court approves Bennett's selection of Cohen Milstein as his choice of lead counsel. *See In re Tarragon*, 2007 WL 4302732, at *2.

## III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 11) of Gordon Chace to be appointed lead plaintiff and to have his choice of counsel approved as lead counsel is DENIED;

**ORDERED** that the motion (Docket No. 8) of Matthew Chia–Yiu Maa, David Dai, Shawn Rad, and Mohammad Khan, to be appointed lead plaintiffs and to have their choice of counsel approved as lead counsel for is DENIED; and

**ORDERED** that the motion (Docket No. 5) of William R. Bennett to be appointed lead plaintiff and to have his choice of counsel, Cohen, Milstein, Sellers & Toll, P.L.L.C., approved as lead counsel is GRANTED.

**SO ORDERED.**