**Harriet GOLDSTEIN, Individually and on Behalf of All Others Similarly Situated, Plaintiff,**

v.

**PUDA COAL, INC., et al., Defendant.**

**No. 11 Civ. 02598.**

United States District Court, S.D. New York.

Dec. 6, 2011.

cient on a going-forward basis, such that Becker may return to Quinn. The Court declines to do so.

Curtis Victor Trinko, Jennifer Elizabeth Traystman, Law Offices of Curtis V. Trin-

ko, LLP, New York, NY, Adriene O. Bell, D. Seamus Kaskela, David M. Promisloff, Kessler Topaz Meltzer & Check, LLP, Radnor, PA, Myron Harris, Philadelphia, PA, for Plaintiff.

## MEMORANDUM AND ORDER

BARBARA S. JONES, District Judge.

The present matter involves eleven related cases brought against Puda Coal, Inc. ("Puda").[1] Although all eleven cases have been brought against Puda, the Complaints vary with respect to other named defendants. Examining all of the Complaints together, it appears that they collectively state causes of action against seven of Puda's current and former officers and directors,[2] as well as, the underwriters of Puda's 2010 stock offering.[3] The shareholder plaintiffs in all eleven cases bring federal securities class actions on behalf of investors who purchased common stock of Puda. The majority of the Complaints define the class as investors who purchased Puda securities between November 13, 2009, and April 11, 2011 (the "Class Period"). Two of the Complaints, however, define their classes as investors who purchased Puda securities between a slightly-narrower range of dates.[4]

1.

| Docket Number | Case Name | Date Filed |
|---|---|---|
| 11 CV 2598 | *Goldstein v. Puda Coal, Inc. et al.* | April 15, 2011 |
| 11 CV 2608 | *Tallant v. Puda Coal, Inc. et al.* | April 15, 2011 |
| 11 CV 2609 | *Weissmann v. Puda Coal, Inc. et al.* | April 15, 2011 |
| 11 CV 2657 | *Alexander v. Zhao et al.* | April 19, 2011 |
| 11 CV 2660 | *Rosenberger v. Puda Coal, Inc. et al.* | April 19, 2011 |
| 11 CV 2666 | *Korach v. Puda Coal, Inc. et al.* | April 14, 2011 |
| 11 CV 2695 | *Kendall et al. v. Puda Coal, Inc. et al.* | April 20, 2011 |
| 11 CV 4266 | *LaDuca v. Puda Coal, Inc. et al.* | June 23, 2011 |
| 11 CV 5189 | *Burquist v. Puda Col Inc. et al.* | April 21, 2011 |
| 11 CV 5190 | *Thumith v. Puda Coal, Inc. et al.* | June 7, 2011 |
| 11 CV 5259 | *Lin v. Puda Coal Inc. et al.* | April 14, 2011 |

2. Defendant Ming Zhao ("Zhao") served, from July 15, 2005 to June 25, 2008, as Puda's President and Chief Executive Officer ("C.E.O"). Zhao has also served on Puda's Board of Directors from July 15, 2005 to present. Defendant Liping Zhu ("Zhu") joined Puda on June 25, 2008 and now serves as Puda's President and C.E.O., as well as a director. Defendant Qiong "Laby" Wu ("Wu") became Puda's Chief Financial Officer on July 23, 2008. Defendant Yao Zhao is the brother of Defendant Zhao and was a manager of Puda and a beneficial owner of 5% or more of its outstanding common shares. Defendant Jianfei Ni ("Ni") was appointed to Puda's board of directors on June 29, 2007. Defendant C. Mark Tang ("Tang") joined Puda's board of directors on October 9, 2007, on which he is a member and Chairman of Puda's nominating and corporate governance committee, as well as a member of Puda's audit and compensation committees. Defendant Lawrence S. Wizel ("Wizel") joined Puda's board of directors on August 3, 2007, on which he served as a member and Chairman of Puda's audit committee, as well as a member of the compensation and nominating and corporate governance committees.

3. Defendants Brean Murray, Carret & Co., LLC ("Brean")and Macquarie Capital (USA) Inc. ("Macquarie") (collectively the "Underwriter Defendants") underwrote Puda's December 8, 2010 stock offering.

4. Plaintiff in *Rosenberger v. Puda Coal, Inc. et al.* defines its class of investors as those who purchased Puda securities between November 15, 2009 and April 11, 2011, whereas, Plaintiff in *Lin v. Puda Coal Inc. et al.*, defines its class as investors who purchased Puda securities between November 13, 2009 and April 8, 2011.

Nine individual and groups of investors initially filed motions to consolidate the related actions, to be appointed as lead plaintiff, and to designate their lawyers as lead counsel. One group of investors, consisting of the Connie L. Douglass 1996 Revocable Trust, Trinity Global Growth & Income Fund, L.P., and Greg and Jana Womack Living Trust (collectively the "Womack Group"), has now withdrawn their motion. Three other movants, Ho Wing Sit, Cesare Crognale, and the Puda Coal Shareholder Group,[5] concede in their responses that they do not have the largest financial interest in the relief sought by the class. Although these three movants all express a readiness to assume the role of lead plaintiff, they have revised their original submissions to acknowledge that their motions to be appointed as lead plaintiff are contingent on the Court first finding that the movants with larger financial interests are unwilling or unable to satisfy the Private Securities Litigation Reform Act of 1995 ("PSLRA") requirements of appointment. Finally, one movant, Sal LaDuca has never filed a responsive motion to the briefs opposing his selection as lead plaintiff, nor has he filed any objections to the competing motions.

As a result of the subsequent responsive filings, in addition to the nine outstanding motions to consolidate the related actions, there remain four investor groups seeking to be appointed as lead plaintiff and to designate their lawyers as lead counsel. The four movants who continue to seek appointment as lead plaintiff are: Salomon Querub, Howard Pritchard, and Hotel Ventures LLC (the "Querub Group"); N & D Faulkner, Ltd., A. David Flor, Jan Louis Bradewie, Avadhesh Agarwal, and Michael Kiel (the "Puda Coal Investor Group"); Donald Wilkinson and Robert Thumith ("Wilkinson and Thumith"); and Kayla Clarke Blankenship, Jo Blankenship, and Samuel Aaron Blankenship (the "Blankenship Family Group"). The Court now turns to all of the outstanding motions.

## FACTUAL BACKGROUND

Puda is a Delaware corporation with its headquarters in Taiyuan, which is a city in the Shanxi Province of northern China. It supplies premium cleaned coal used to produce coke for steel manufacturing in China. Puda was traded on the American Stock Exchange ("AMEX") during the Class Period.

From November 2009 through 2010, Puda stated in public statements and filings with the Securities and Exchange Commission ("SEC") that its only business operations were conducted by a separate Chinese corporate entity, Shanxi Puda Coal Group Co., Ltd. ("Shanxi Coal"), which owns all of Puda's reported mining assets, coal washing plants, cash and receivables. In these statements, Puda represented that it controlled Shanxi Coal through a 90% indirect equity ownership stake. Additionally, Puda made various representations regarding the accuracy of both its published financial statements and the descriptions of its operations.

On December 8, 2010, Puda conducted an offering of its securities (the "Offering") and filed with the SEC a series of Registration Statements and Prospectuses (collectively, the "Offering Materials"). Through the Offering, Puda sold 9 million shares of Puda stock to investors at a price of $12.00 per share, resulting in total proceeds of $108 million. The Offering Materials incorporated by reference the materi-

---

**5.** The Puda Coal Shareholder Group is composed of three unrelated investors: Charles Irle, Steve McManus, William Harrison, and Jack Hoffman.

als that Puda had previously filed with the SEC in 2009 and 2010.

Throughout the early part of 2011, Puda's public statements and SEC filings continued to paint a picture of the company consistent with the earlier representations from 2009 and 2010.

On April 8, 2011, Alfred Little ("Little"), an investor who researches and blogs about Chinese companies, reported that Puda did not actually indirectly own Shanxi Coal (the "Little Article"). Little further reported that, in contradiction of Puda's public statements, Defendants Ming Zhao ("Zhao") and Yao Zhao had transferred Puda's assets such that Puda had become an empty shell company as early as September 2009. On April 8, 2011, Puda issued a press release announcing that it was currently reviewing the allegations regarding improper share transactions by Zhao. In reaction to the Little Article and the press release, shares of Puda stock declined more than 34% on April 8, 2011.

On April 11, 2011, Puda announced in a press release that it had unanimously ratified the Audit Committee's decision to launch a full investigation into the allegations raised in the Little Article. In addition, the press release noted that "evidence supports the allegation that there were transfers by Mr. Zhao in subsidiary ownership that were inconsistent with disclosure made by the Company in its public securities filings." In response to the announcement, trading in Puda stock was halted on April 11, 2011.

## CONSOLIDATION

■ Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may ... consolidate the actions...." Fed.R.Civ.P. 42(a). Trial courts retain broad discretion in determining whether or not consolidation is appro-

priate. *Ellenburg III v. JA Solar Holdings Co., Ltd., et al.,* 262 F.R.D. 262, 264 (S.D.N.Y.2009) (citing *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir.1990)).

■ The Court finds that consolidation is appropriate here. The movants each seek consolidation and no party has raised any opposition to consolidation. In addition, the allegations supporting the claims asserted in each class action are almost identical. *See Sofran v. LaBranche & Co., Inc.,* 220 F.R.D. 398, 401 (S.D.N.Y.2004) (consolidating securities fraud class actions where both groups of plaintiffs requested consolidation and each action "assert[ed] essentially similar and overlapping claims brought on behalf of purchasers of [the defendant's] securities [during the class period] who purchased in reliance of the materially false and misleading statements and omissions at all relevant times"). All of the Complaints turn on allegations that defendants failed to disclose or indicate that: (1) Puda's Chairman engaged in unauthorized transfers of the ownership of Shanxi Coal; (2) such transfers were not disclosed to investors; (3) Puda's ownership stake in Shanxi coal was substantially less than what Puda detailed to investors; (4) Puda improperly consolidated Shanxi Coal's financial results into Puda's financial results; (5) Puda lacked adequate internal controls; (6) Puda's financial statements were materially false and misleading at all relevant times; and (7) the materials disseminated in connection with the Offering were materially misleading when issued. While the Court acknowledges that there are minor differences in the Complaints, since the underlying factual and legal questions appear to be indistinguishable, these differences do not recommend against consolidation. *See Kaplan v. Gelfond, et al.,* 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action,

defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.") Furthermore, given that no party has objected, the Court finds it unlikely that any party will suffer prejudice as a result of consolidation. *Id.* at 91 ("[W]e note that all the movants support consolidation and that no party objects, a consideration which weighs heavily against the potential for prejudice.") The Court therefore grants the motions to consolidate.

## LEAD PLAINTIFF

### Procedure

■ Having granted the motions to consolidate, the Court now turns to the question of who should be appointed lead plaintiff in the consolidated class action. "Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the district court must 'appoint as lead plaintiff the member or members that the court determines to be most capable of adequately representing the interests of class members ....'" *Ellenburg,* 262 F.R.D. at 265 (citing 15 U.S.C. § 78u–4(a)(3)(B)(i)). In order to determine which class member is "most capable of adequately representing" the interests of the class, the Court engages in a two-step process.

"The first step establishes as presumptive lead plaintiff the person or group of persons who meet(s) the following three criteria: (1) the candidate must have filed the complaint or made a motion in response to a notice; (2) the candidate must have the largest financial interest in the relief sought by the class, and (3) the candidate must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re Tronox,*

*Inc. Secs. Litig.,* 262 F.R.D. 338, 343–44 (S.D.N.Y.2009) (internal citations omitted).

Having identified the presumptive lead plaintiff through the first step, the Court takes the second step of providing other members of the class with the opportunity to rebut the presumptive designation. "In order to rebut the designation, class members must prove either that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at 344 (internal citations omitted).

Should the Court decide that the original presumptive lead plaintiff has been successfully rebutted, that candidate is disqualified and the Court will return to the first phase of the process to identify a new presumptive lead plaintiff. This process repeats itself until a candidate succeeds in both the first and second phases of the process. *See Id.*

### Presumptive Lead Plaintiff

In the instant action, all four of the proposed lead plaintiffs filed timely motions in response to a notice, thereby satisfying the first prong of the inquiry into the presumptive lead. The Court therefore looks first to the financial interests of each candidate.

### Largest Financial Interest

■ The PSLRA does not specify how a financial interest in the litigation is to be determined, but courts have looked at four factors to determine which plaintiff has the greatest financial interest in the outcome of a securities litigation: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered...." *Ellenburg,* 262 F.R.D. at 265

(citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y.2005)). Of these four factors, financial loss is the most important element of the analysis. *See Varghese et al. v. China Shenghuo Pharm. Holdings, Inc. et al.*, 589 F.Supp.2d 388, 395 (S.D.N.Y.2008) ("Financial loss, the last factor, is the most important element of the test.")

■ The Court finds that, having suffered a collective financial loss of over $2 million, the Querub Group has the largest financial interest in the outcome of the litigation. To the extent that competing movants have challenged the size of the Querub Group's financial loss on the basis that the group should be disaggregated, the Court finds these arguments unavailing. As discussed in further detail in the next section, the Court finds that the Querub Group is a proper group to be selected as lead plaintiff under the PSLRA. Having decided that aggregation is appropriate, the collective losses of the Querub Group clearly constitute the largest financial loss of any movant. Furthermore, although the Blankenship Family Group and the Puda Coal Investor Group have contested the proper calculation of the losses suffered by individual members of the Querub Group, the Court need not resolve this dispute. Once aggregated, the Querub Group suffers the greatest losses even adopting the valuations proposed by competing movants. *See Id.* at 397 ("[T]he Court need not resolve the proper formula for calculating the approximate losses suffered in this case, as Bennett has suffered greater losses under both proposed valuations.")

### Requirements under Rule 23

In order to satisfy the requirements under Rule 23 of the Federal Rules of Civil Procedure, the prospective lead plaintiff must demonstrate at the consolidation stage both "typicality" and "adequacy." *See Constance Sczesny Trust v. KPMG LLP, et al.*, 223 F.R.D. 319, 323–4 (S.D.N.Y.2004). "The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Foley v. Transocean Ltd., et al.*, 272 F.R.D. 126, 131 (S.D.N.Y.2011). "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.*

■ The Court finds that the Querub Group's claims arise from the same fraudulent conduct as the other class members' claims and injuries. The Court also notes that there have been no challenges to the adequacy of the Querub Group's chosen counsel, its lack of conflict with the class, and its sufficiency of interest. Competing movants have, however, raised several other concerns regarding both the typicality and adequacy of the Querub Group. These concerns are that (1) the group is atypical because Salomon Querub purchased shares following the April 8, 2011 Little Article reporting the fraud; (2) investors, like Hotel Ventures LLC ("Hotel Ventures"), who traded options cannot represent the class; and (3) the group is improperly aggregated.

### Purchases following April 8, 2011

The Blankenship Family Group has argued that any investor, like Querub Group member Salomon Querub, who purchased Puda stock after the fraud was initially reported in the Little Article on April 8, 2011, cannot serve as lead plaintiff. This argument rests on an assumption that such investors could not have relied on

market information in their purchase of Puda stock. Since the claims in this case rest on a theory of fraud on the market, it follows that such investors are atypical of the class and cannot satisfy Rule 23's typicality requirement. The Court does not agree that Puda stock purchases following the publication of the Little Article are *prima facie* atypical or made without reliance on the market.

Although the Little Article made allegations regarding the underlying fraud, at the time of its publication, the article was merely a third-party report that remained unconfirmed by Puda itself. Since the article could not "actually concede[ ] the existence of the fraudulent schemes at issue in this litigation," such a disclosure cannot have provided "any curative disclosure."[6] *Dietrich v. Bauer,* 192 F.R.D. 119, 125 n. 1 (S.D.N.Y.2000). *See also In re Tronox, Inc. Secs. Litig.,* 262 F.R.D. 338, 346 (S.D.N.Y.2009) (Finding that purchases following partial corrective disclosures that do not "sufficiently correct . . . prior false and misleading statements" do not render proposed lead plaintiff atypical.) In addition, given that the Blankenship Family Group has itself proposed a class period that extends until the date of Puda's corrective disclosure on April 11, 2011, the Court disagrees that purchases made following the publication of the Little Article on April 8, 2011 would be atypical of those made by other class members. *See* Memorandum of Law in Support of the Motion to Consolidate Related Cases, to Appoint the Blankenship Family as Lead Plaintiff, and to Approve the Selection of Lead Counsel, *KORACH v. PUDA COAL, INC., et al.,* No. 11 Civ. 2666 at 1 (S.D.N.Y. Apr. 14, 2011).

*Options Trading*

Along with its arguments regarding purchases after April 8, 2011, the Blankenship Family Group has also challenged the Querub Group's appointment on the basis that its member Hotel Ventures is an atypical investor because of its sale of put options in Puda Stock. Citing *Laventhall v. Gen. Dynamics Corp.,* 704 F.2d 407 (8th Cir.1983), and a number of cases from this district, the Blankenship Family Group argues that individuals who trade in options cannot be considered typical of a class of shareholders. *See In re Elan Corp. Sec. Litig.,* No. 08–CV–8761, 2009 WL 1321167, at *2, 2009 U.S. Dist. LEXIS 39859, at *6 (S.D.N.Y. May 8, 2009); *Andrada v. Atherogenics, Inc.,* No. 05 Civ. 00061, 2005 WL 912359, 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005); and *Starkman v. Warner Commc'n, Inc.,* 671 F.Supp. 297 (S.D.N.Y.1987). The Court finds that the cases cited by the Blankenship Family Group are inapplicable to its consideration of the Querub Group. In contrast to the plaintiffs in the cases cited by the Blankenship Family Group, Hotel Ventures traded in both common stock and options during the class period. The Court also notes that investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is, as here, "whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct." *In re Oxford Health Plans, Inc. Sec. Litig.,* 199 F.R.D. 119, 123–24 (S.D.N.Y. 2001). *See also In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156 (S.D.N.Y.1997).

*Proper "Group"*

██ The PSLRA expressly permits a "person or group of persons" to be ap-

---

**6.** The Blankenship Family Group points to the Little article as evidence of an April 8, 2011 disclosure that "Puda gave away the company and converted itself into a holding company," but their briefs notably do not make any reference to a specific disclosure by Puda itself on that date. Indeed, Puda's own public statements on April 8, 2011 acknowledged only that the company was looking into the allegations of the Little Report.

pointed lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The PSLRA does not, however, define how members of a "group" should be related to one another. *Varghese*, 589 F.Supp.2d at 392. Although there is some disagreement amongst district courts as to whether unrelated investors can form a "group of persons" that may be appointed lead plaintiff, the majority of courts "have adopted an intermediate position, permitting unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis." *Id.* Although courts will resist appointing as lead plaintiff a group that is "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff," "a group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive." *Janbay v. Canadian Solar, Inc., et al.*, 272 F.R.D. 112, 119 (S.D.N.Y.2010).

In the instant action, the competing movants have primarily argued that the Querub Group is an improperly aggregated group because: (1) its members lack a pre-existing relationship, and (2) its original motion papers provided insufficient information regarding the group and its members. Additionally, the competing movants have also raised concerns regarding: (1) the Querub Group's willingness to sever in order to serve as individual lead plaintiffs; and (2) the group's decision to put forward only two of their retained law firms as co-lead counsel, leaving the third firm with the designation of "Counsel for Plaintiffs."

None of these arguments leads the Court to find that the Querub Group fails to satisfy the requirements of Rule 23. With the exception of the Blankenship

Family Group, whose aggregate financial loss is less than the loss of any single member of the Querub Group, none of the proposed lead plaintiffs have a relationship outside of this litigation. In addition, although these materials were not submitted when their motion to appoint lead plaintiff was first filed, all three members of the Querub Group have now submitted sworn declarations which describe: why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff.

With respect to concerns regarding the Querub Group's willingness to sever and the roles played by its various counsel, the Court finds these arguments unpersuasive. Particularly in light of the degree to which the Querub Group's individual financial losses dwarf those of the competing movants, the arguments raised on these two issues do not lead the Court to find that the Querub Group is inadequate to serve as lead plaintiff.

Individual Querub Group members, Salomon Querub and Howard Pritchard, have the largest and second-largest individual losses of any of the competing movants. Furthermore, Salomon Querub's individual losses exceed all but one of the competing movants' collective losses. The single competing movant whose collective losses rival Salomon Querub's is the Puda Coal Investor Group, and this group only manages to achieve its collective loss figure by aggregating a long list of individual shareholder interests, none of whom has an interest which is even half of Salomon Querub's.

Given that the Querub Group has now submitted evidence that its unrelated members "will be able to function cohesively and to effectively manage the litigation apart from their lawyers," *Janbay*, 272 F.R.D. at 119, the degree to which Salomon Querub's losses overshadow those of the other movants further supports the Court's appointment of the Querub Group as lead plaintiff. *See Freudenberg v. E*Trade Fin. Corp., et al.*, No. 07 Civ. 8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008) ("The appropriateness of KSG's appointment is further supported by the fact that, as noted above, Straxton's [individual member of KSG] losses alone would qualify it as the party with the largest financial interest in the litigation.") The Court therefore finds that the Querub Group is properly a group for purposes of appointment as lead plaintiff under the PSLRA.

**Rebutting Presumption of Adequacy**

Finally, in an attempt to rebut the Querub Group's status as presumptive lead plaintiff, Wilkinson and Thumith argue that the Querub Group will be subject to the unique defense that the group lacks standing. Wilkinson and Thumith base this argument on their claim that the Querub Group's original motion papers provide insufficient information regarding the relationship between Derek Stebner ("Stebner"), signatory to Hotel Ventures' certification, and Hotel Ventures. In light of the fact that the motion was filed on behalf of Hotel Ventures and Stebner is the sole owner of Hotel Ventures, the Court finds that Wilkinson and Thumith have failed to rebut the Querub Group's presumptive lead plaintiff status.

**APPOINTMENT OF LEAD COUNSEL**

The Querub Group has selected the Rosen Law Firm P.A. and Glancy Binkow & Goldberg LLP as co-lead counsel. The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z–1(a)(3)(B)(v). "Courts, however, may decline to approve Lead Plaintiff's suggested counsel 'to protect the interests of the class.'" *Ferrari v. Impath, Inc., et al.*, No. 03 Civ. 5667, 2004 WL 1637053 at *7 (S.D.N.Y. July 20, 2004) (internal citations omitted).

Since the Court finds the Querub Group's choice of counsel qualified to prosecute this securities class action, and has received no objections with respect to counsel's qualifications, the Court approves the selection of the Rosen Law Firm P.A. and Glancy Binkow & Goldberg LLP as co-lead counsel.

**CONCLUSION**

Having considered the motions for consolidation, appointment of lead plaintiff, and lead counsel, the Court consolidates the actions listed in footnote 1, appoints Salomon Querub, Howard Pritchard and Hotel Venutures LLC as Lead Plaintiffs, and approves the selection of the Rosen Law Firm P.A. and Glancy Binkow & Goldberg LLP as Co–Lead Counsel.

**The parties are advised that the Court has also entered on today's date a separate Case Management Order in this case. The Case Management Order provides for deadlines and filing instructions to be followed by the parties moving forward.**

The Clerk of the Court is directed to terminate the following motions:

- From Docket 11–CV–2598, the following ECF documents: 7, 10, 13, and 16.
- From Docket 11–CV–2608, ECF document 14.
- From Docket 11–CV–2609, ECF document 9.

- From Docket 11–CV–2657, ECF document 16.
- From Docket 11–CV–2660, ECF document 10.
- From Docket 11–CV–2666, the following ECF documents: 8, 11, 14, 19, 20, 25, 28.
- From Docket 11–CV–2671, ECF document 5.
- From Docket 11–CV–2695, ECF document 8.

**SO ORDERED.**