06-1664-cv (L)
W.R. Huff Asset v. Deloitte & Touche

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: November 7, 2007                                    Decided: December 3, 2008)

Docket Nos. 06-1664-cv(L), 06-1749(con)

W. R. HUFF ASSET MANAGEMENT CO., LLC,

      *Plaintiff-Appellee*,

      v.

Deloitte & Touche LLP, Credit Suisse Securities (USA) LLC, Credit Suisse, New York Branch, The Royal Bank of Scotland plc, The Bank of Nova Scotia, Toronto Dominion Texas, LLC (f/k/a Toronto Dominion Texas, Inc.), Mizuho International PLC, ABN AMRO Inc., Banc of America, N.A., Fleet Securities, Inc. (n/k/a Bank of America, N.A.), Banc of America Securities LLC, Barclays Capital Inc., Barclays Bank PLC, BNY Capital Markets, Inc., The Bank of New York Company, Inc., CIBC World Markets Corp., CIBC, Inc., Citibank, N.A., Citigroup Inc., Citicorp USA, Inc., Citigroup Global Markets, Inc., Salomon Smith Barney Inc. (n/k/a Citigroup Global Markets, Inc.), Calyon Securities (USA), Inc. (f/k/a Credit Lyonnais Securities (USA) Inc.), Calyon New York Branch (successor by operation of law to Credit Lyonnais New York Branch), Deutsche Bank Alex. Brown, Inc., Deutsche Bank AG,  Harris Nesbitt Corp., JPMorgan Chase & Co., Morgan Stanley & Co., Inc., JPMorgan Securities Inc., Scotia Capital (USA), Inc., Cowen & Co., LLC (f/k/a SG Cowen Securities Corporation), Societe Generale, also known as a French Banking Institution, Suntrust Capital Markets, Inc., SunTrust Bank, TD Securities (USA), Inc., ABN AMRO Bank N.V., BMO Nesbitt Burns Corp. (n/k/a Harris Nesbitt Burns Corp.); Credit Lyonnais Securities (USA) Inc., SG Cowen Securities Corp., and Buchanan Ingersoll & Rooney Professional Corporation,

      *Defendants-Appellants*.

Before: CABRANES, SACK, and KATZMANN, *Circuit Judges*.

Defendants-appellants filed this interlocutory appeal from two orders of the United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge*), denying their motion to dismiss plaintiff-appellee's complaint for lack of standing, and adhering to that decision upon reconsideration. We reverse on the ground that plaintiff, an investment advisor that has (a) the discretionary authority to make investment decisions on its clients' behalf, and (b) the power of

1

attorney to file suit on its clients' behalf, but does not have ownership or title of the claim itself, lacks constitutional standing to bring a securities action in a representative capacity on behalf of its clients.

Reversed and remanded.

Louis R. Cohen (Paul R.Q. Wolfson, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, *for Defendants-Appellants Credit Suisse Securities (USA) LLC; Credit Suisse, New York Branch; The Royal Bank of Scotland plc; and Mizuho International plc.*

Max R. Shulman, Cravath, Swaine & Moore LLP, New York, NY, *for Defendant-Appellant Deloitte & Touche LLP.*

Steven R. Schoenfeld, Torys LLP, New York, NY, *for Defendant-Appellant Toronto Dominion (Texas) LLC.*

Andrew J. Frackman (Tancred V. Schiavoni, *on the brief*) O'Melveny & Myers LLP, New York, NY, *for Defendant-Appellant ABN AMRO Bank N.V.*

Michael Luskin (Trevor Hoffman, *on the brief*), Luskin, Stern & Eisler LLP, New York, NY, *for Defendant-Appellant The Bank of Novo Scotia.*

Robert J. Ward, Mayer, Brown, Rowe & Maw LLP, New York, NY, *for Defendants-Appellants Bank of Montreal and BMO Nesbitt Burns Corp.*

Mitchell A. Lowenthal, Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendants-Appellants ABN AMRO Inc.; Banc of America Securities LLC; Banc of America, N.A.; Barclays Capital Inc.; Barclays Bank PLC; BNY Capital Markets, Inc.; The Bank of New York Company, Inc.; CIBC World Markets Corp.; CIBC Inc.; Citibank,N.A.; Citigroup Inc.; Citicorp USA, Inc.; Citigroup Global Markets Inc.; Calyon Securities (USA) Inc.; Calyon New York Branch; Deutsche Bank Alex. Brown Inc.; Deutsche Bank AG; BMO Capital Markets Corp.; J.P. Morgan Securities Inc.; JPMorgan Chase & Co.; Morgan Stanley & Co. Incorporated; Scotia Capital (USA) Inc.; Cowen & Company, LLC; Societe Generale; SunTrust Capital Markets, Inc.; SunTrust Bank; and TD Securities (USA) Inc.*

Gregory A. Markel (Stacey A. Lara, *on the brief*), Cadwalader, Wickersham & Taft LLP, New York, NY, *for Defendant-Appellant Wachovia Bank, N.A.*

Joseph Friedman (William M. Wycoff, Robert J. Ridge, J. Alexander Hershey, *on the brief*), Thorp Reed & Armstrong, LLP, *for Defendant-Appellant Buchanan Ingersoll & Rooney Professional Corporation.*

LAWRENCE M. ROLNICK, (Thomas E. Redburn, *on the brief*), Lowenstein Sandler PC, Roseland, NJ, *for Plaintiff-Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*:

We are asked to determine whether an investment advisor that has (a) discretionary authority to make investment decisions for its clients, and (b) a power of attorney from its clients to bring this lawsuit, has constitutional standing to sue for violations of federal securities laws on behalf of its clients, who are the beneficial owners of the underlying securities, and not in its own name. This question is before us on an interlocutory appeal of two orders of the United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge*)—entered August 30, 2005 and October 19, 2005—denying a motion to dismiss the complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), and adhering to that ruling on a motion for reconsideration. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, Nos. 03 MDL 1529(LMM), 03 Civ. 5752, 03 Civ. 5753, 2005 WL 2087811 (S.D.N.Y. Aug. 30, 2005) ("*Huff I*"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, Nos. 03 MDL 1529(LMM), 03 Civ. 5752, 03 Civ. 5753, 2005 WL 2667201 (S.D.N.Y. Oct. 19, 2005) ("*Huff II*"). *See also In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, Nos. 03 MDL 1529(LMM), 03 Civ. 5752, 03 Civ. 5753, 2006 WL 708303, at *4-5 (S.D.N.Y. Mar. 20, 2006) (ordering certification for immediate appeal pursuant to 28 U.S.C. § 1292(b)).

## BACKGROUND

In the first half of 2002, Adelphia Communications Corporation ("Adelphia") disclosed for the first time the existence of billions of dollars of debt that led, ultimately, to the company's dissolution in bankruptcy. Many investors in Adelphia filed civil lawsuits alleging various forms of securities fraud by Adelphia, its management, underwriters, outside auditors, and others. *See In re Adelphia Commc'ns Corp.*

3

*Sec. and Derivatives Litig.*, No. 03 MDL 1529(LMM), 2005 WL 1278544, at *1 (S.D.N.Y. May 31, 2005) (describing the background of the litigation).

Plaintiff-appellee W.R. Huff Asset Management Co., LLC ("Huff") is an investment advisor for institutional investors such as public employee pension funds. Huff alleges that defendants-appellants—all firms that provided underwriting, auditing, or legal services—prepared, facilitated, or certified inaccurate and misleading disclosures in Adelphia's financial statements, in violation of sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*(a)(2), and sections 10(b) and 18 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78r.

Huff brings this lawsuit as "the investment adviser and attorney-in-fact on behalf of certain purchasers of . . . debt securities issued by Adelphia." (2d Am. Compl. 1.) Huff does not allege that it was an investor in Adelphia; instead, Huff claims that it provided investment advice to its clients and, from 1999 until 2002, purchased Adelphia securities on their behalf. These clients, not Huff, have suffered financial losses as a result of Aldelphia's collapse.[1] Indeed, Huff explicitly disclaims that it "suffered an injury individually in a way that is separate from its agency function." (Transcript of Feb. 20, 2003 Hearing, 19.) *See also id.* at 14 ("We are not seeking damages except on behalf of the beneficial owners of the securities from whom we secured powers of attorney.").[2]

Defendants challenged Huff's constitutional standing to sue on behalf of its investment clients in a motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure,

---

[1] Proceeding in parallel with the instant action are two sets of related actions, also assigned to Judge McKenna, in which some of Huff's clients are participating: (1) a class action suit proceeding as part of the multi-district litigation related to the Adelphia collapse, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-CV-5755, *et al.* (S.D.N.Y.); and (2) individual actions brought by some of Huff's clients in their own names, *see, e.g., New York City Employees Ret. Sys. v. Adelphia Comm. Corp.*, Nos. 02-CV-3778 & 03-CV-5789 (E.D.P.A..); *Los Angeles County Employees Ret. Ass'n v. Rigas*, No. 03-CV-5750 (S.D.N.Y.).

[2] In its briefs to the District Court and this Court, but not in its complaint, Huff avers that it suffered informational injuries and damage to its reputation as a result of Adelphia's misstatements and the poor performance of the Adelphia bonds that Huff bought for its clients. Nonetheless, according to Huff's complaint, the only award that would not ultimately flow to Huff's clients is, presumably, the "costs and expenses in this litigation, including reasonable attorneys' fees," which Huff requests in its Prayer for Relief. (2d Am. Compl. 227.)

which concerns a federal court's lack of subject matter jurisdiction.[3]  Relying in part on *Indemnified Capital Invs., SA. v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1410 (7th Cir. 1993) (concluding that an investment advisor did not have standing where beneficial owners did not assign their rights to sue to the investment advisor), the District Court initially concluded that Huff's status as attorney-in-fact satisfied the requirements of constitutional standing.  *See Huff I*, 2005 WL 2087811, at *3.

Defendants brought a motion for reconsideration, arguing that the District Court had overlooked our decision in *Advanced Magnetics, Inc. v. Bayfront Partners Inc.*, 106 F.3d 11 (2d Cir. 1997), in which we held that a company that possessed powers of attorney from aggrieved shareholders, but did not have a valid assignment of the shareholders' claims, lacked constitutional standing to sue on behalf of the shareholders.  *See id.* at 17-18 ("The grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name.").  Nonetheless, the District Court adhered to its original decision and distinguished *Advanced Magnetics* on the ground that Huff was not only an "attorney-in-fact," but also an investment advisor with unfettered discretion to make investment decisions.  *See Huff II*, 2005 WL 2667201, at *1 ("Here . . . in addition to the powers of attorney Huff was given by its clients, Huff was also the clients' investment advisor with unrestricted decision making power over the clients' investments, including those in Adelphia securities.").  The District Court cited, as an analogous decision, *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003), in which an investment advisor that brought a lawsuit on behalf of its clients was found to have statutory standing to sue as a "purchaser" of securities because the investment advisor was the attorney-in-fact and had unrestricted authority to make investment decisions for its clients.  *See Huff II*, 2005 WL 2667201, at *1.

---

[3] Defendants-appellants also challenged Huff's statutory standing under Rule 12(b)(1), its failure to comply with the real party in interest requirement under Rule 17(a), and its failure to name all parties under Rule 10(a) of the Federal Rules of Civil Procedure.  The District Court denied relief on all of these grounds.  *See Huff I*,  2005 WL 2087811, at *2-4.  However, the only issue on appeal is whether Huff lacked constitutional standing to sue.  We express no view on the denial of defendants' motion to dismiss on any other ground.

On appeal,[4] defendants-appellants argue that the District Court misapplied *Advanced Magnetics* because the central inquiry of that case was whether an investment advisor's clients properly assigned title or ownership of their securities claims to the named plaintiff, not whether the named plaintiff had previously purchased securities for its clients. *See Advanced Magnetics*, 106 F.3d at 17 (observing that a valid assignment must "transfer at least title or ownership . . . to accomplish a completed transfer of the entire interest of the assignor in the particular subject of the assignment" (internal quotation marks and citation omitted)). Huff replies with a different interpretation of *Advanced Magnetics*. According to Huff, an assignment of claims "is *sufficient* to confer standing," but is not "*necessary* for standing to be found." Under Huff's interpretation, its status as both "attorney-in-fact" and "investment advisor" provides equally sufficient grounds for constitutional standing.

We note that nowhere in this appeal, in the proceedings below, or in its complaint has Huff alleged that its clients—the Beneficial Owners—assigned title or ownership of their claims to Huff.

While this case was pending before us, the Supreme Court held in *Sprint Communications Co., L.P. v. APCC Servs., Inc.* that an assignee who holds legal title to an injured party's claim has constitutional standing to pursue that claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor. *See* 554 U.S. —, 128 S. Ct. 2531, 2542-44 (2008). The parties have submitted supplemental letter briefs addressing the relevance of *Sprint* to the outcome of this case. We therefore take this opportunity to discuss the enduring elements of *Advanced Magnetics* in light of *Sprint*, although we are mindful that our central inquiry—whether Huff has constitutional standing to sue on behalf of its clients—was decided by the District Court without the benefit of the Supreme Court's most recent guidance.

---

[4] Huff's complaint names parties that are not participating in this appeal as defendants, including members of Adelphia's senior management. (2d Am. Compl. 45-48.)

**DISCUSSION**

We review *de novo* whether a plaintiff has constitutional standing to sue. *See, e.g.*, *Fuentes v. Bd. of Educ. of City of New York*, 540 F.3d 145, 148 (2d Cir. 2008). Because "standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

As an initial matter, we disagree with the District Court's ruling that constitutional standing may be assessed using the test for statutory standing developed in *Weinberg*, 216 F.R.D. at 255, a case involving the appointment of a lead plaintiff pursuant to the Private Securities Litigation Reform Act. *See Huff II*, 2005 WL 2667201, at *1 ("The reasoning of *Weinberg* applies with equal force to standing under the securities laws and standing under Article III."). *Weinberg* identified two factors for determining whether investment advisors have statutory standing as "purchasers" under section 10(b) of the Securities Exchange Act: (1) the investment advisor has "unrestricted decision making authority" to invest the securities at issue; and (2) the investment advisor "is also the attorney-in-fact for its clients," *i.e.*, it has obtained the powers of attorney from its clients. 216 F.R.D. at 255. These statutory factors are separate and apart from the elements of constitutional standing, which are set forth below, and cannot be used to avoid constitutional requirements.[5] *See Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima . . . .").

Article III of the Constitution limits the jurisdiction of federal courts to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2. In order to ensure that this "bedrock" case-or-

---

[5] For purposes of this case, we need not decide when, in the context of a class action under the PSLRA, an investment advisor could qualify as a suitable lead plaintiff. We note, however, that district courts should be mindful that *named* plaintiffs in a class action "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless [they] can thus demonstrate the requisite case or controversy between themselves personally and [defendants], 'none may seek relief on behalf of himself or any other member of the class.'" *Warth*, 422 U.S. at 502 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

7

controversy requirement is met, courts require that plaintiffs establish their "standing" as "the proper part[ies] to bring" suit. *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *see also id.* ("One element of the case-or-controversy requirement is that appellees, based on their complaint, must establish that they have standing to sue."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("Determining that a matter before the federal courts is a proper case or controversy under Article III therefore assumes particular importance in ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society." (internal quotation marks omitted)).

Article III standing consists of three "irreducible" elements: (1) *injury-in-fact*, which is a "concrete and particularized" harm to a "legally protected interest"; (2) *causation* in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). These requirements ensure that a plaintiff has a sufficiently personal stake in the outcome of the suit so that the parties are adverse. *See Baker v. Carr*, 369 U.S. 186, 204 (1962) ("Have [plaintiffs] alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions?").

As a general rule, the "injury-in-fact" requirement means that a plaintiff must have personally suffered an injury. *See, e.g.*, *Lujan*, 504 at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) ("Art[icle] III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.") (internal quotation marks omitted); *Baker*, 369 U.S. at 204. Indeed, "[t]he Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party." *Warth*, 422 U.S. at 499; *see also Moose Lodge No. 107 v. Irvis*, 407 U.S.

163, 166 (1972) (stating that a party may invoke the court's authority only in order to "seek redress for injury done to him . . . not [to] seek redress for injuries done to others").

As we noted above, Huff has not alleged in its complaint that it suffered any injury; rather, the alleged injury was suffered by Huff's clients.[6] Therefore, the dispositive question is whether Huff, as the named plaintiff, can demonstrate an "injury-in-fact" through some other means, such as an assignment of claims. Courts may permit a party with standing to assign its claims to a third party, who will stand in the place of the injured party and satisfy the constitutional requirement of an "injury-in-fact." *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) (observing that, in certain circumstances, "the assignee of a claim has standing to assert the injury in fact suffered by the assignor"); *accord Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002) ("[A] valid and binding assignment of a *claim* (or a portion thereof)—not only the right or ability to bring suit—may confer standing on the assignee." (emphasis in original)).

We addressed the assignment of claims in *Advanced Magnetics*, the case discussed by the District Court upon reconsideration of its initial ruling. The injured parties in that case assigned the "power to commence and prosecute" lawsuits to the named plaintiff. *See* 106 F.3d at 18. We explained that the transfer of title or ownership did not require a "particular form . . . so long as the language manifest[ed the] intention to transfer at least title or ownership . . . to accomplish a completed transfer of the *entire interest* of the assignor in the particular subject of the assignment." *Id.* at 17 (emphasis added) (internal quotation marks omitted). We noted, however, that the agreement at issue did not transfer title or ownership of the claim to the assignee, but rather permitted the assignor to retain the right to terminate the plaintiff-assignee's authority to pursue the assigned claims. *See id.* at 18. In consequence, the assignment amounted to little more than a grant of a power of attorney. But as we further explained, "[t]he grant of a power of attorney . . . is not

---

[6] We address Huff's claims of direct injuries, made for the first time in its briefs, *post*.

9

the equivalent of an assignment of ownership; and standing alone, a power of attorney does not enable the grantee to bring suit in his own name. *Id.* at 17-18. Accordingly, we found that the plaintiff-assignee lacked standing.

As noted above, the Supreme Court recently held that an assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor. *Sprint*, 554 U.S. – , 128 S. Ct. at 2533. In so holding, the Court relied on an historical practice of federal courts that permitted assignees to bring suits in their own right when they were assigned title for the sole purpose of collection. *Id.* at 2537-41; *see also Rosenblum v. Dingfelder*, 111 F.2d 406, 407-08 (2d Cir. 1940) (concluding that a valid assignment of right to bring suit conferred standing on assignee). *But see Sprint*, 128 S. Ct. at 2553 (Roberts, C.J., dissenting) (contending that historical practice required both legal title and a stake in the proceeds). The Court determined that the assignees, who did not suffer a direct or personal injury as a result of defendants' conduct, satisfied the injury-in-fact requirement because the assignment also transferred the assignor's claims for injuries. *Id.* at 2542. Moreover, the Court explicitly rejected the argument that assignees lacked standing because they planned to remit the litigation proceeds to the assignors. *Id.* at 2542-43 ("What does it matter what the aggregators do with the money afterward?").

In our view, *Sprint* makes clear that the minimum requirement for injury-in-fact is that the plaintiff have legal title to, or a property interest in, the claim. *Id.* at 2543-44 ("There is an important distinction between simply *hiring* a lawyer and *assigning* a claim to a lawyer (on the lawyer's promise to remit litigation proceeds). The latter confers a property right (which creditors might attach); the former does not.") (emphases added). Moreover, it rejects the notion, advanced by the Chief Justice and the three other dissenting Justices, that the injury-in-fact prong of the Article III standing requirement mandates more than legal ownership at the time of suit. *See id.* at 2549 (Roberts, C.J., dissenting) ("The majority concludes that a private litigant may sue in federal

10

court despite having to pass back all proceeds of the litigation, thus depriving that party of any stake in the outcome of the litigation.").

*Sprint* therefore implicitly supports the holding of *Advanced Magnetics* that a mere power-of-attorney—*i.e.*, an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor, *see* Black's Law Dictionary 1209 (8th ed. 2004)—does not confer standing to sue in the holder's own right because a power-of-attorney does not confer an ownership interest in the claim. By contrast, an assignment of claims confers legal title or ownership of those claims and thus fulfills the constitutional requirement of an "injury-in-fact." *See Advanced Magnetics*, 106 F.3d at 17-18 (distinguishing power of attorney from assignment of ownership for the purposes of standing); *accord Indemnified Capital Invs.*, 12 F.3d at 1410 ("[I]f [the investment advisor]'s customers were interested in bringing this claim against the defendants, they could very easily have assigned their rights to [the investment advisor]. Thus . . . we are of the opinion that [the investment advisor] has failed to satisfy . . . the constitutional requirements . . . of standing . . . .").[7]

In the instant case, Huff's clients have not transferred ownership of, or title to, their claims to Huff, as required by both *Sprint* and *Advanced Magnetics*. Rather, Huff claims it is "empowered by powers of attorney" to bring a lawsuit "in its representative capacity." Huff's power-of-attorney permits it to serve as an agent of its clients and to conduct litigation on behalf of its clients as their attorney-in-fact,[8] but, like the relationship at issue in *Advanced Magnetics*, Huff's power-of-attorney is not purported to be a valid assignment and does not confer a legal title to the claims it brings. While Huff

---

[7] The holding of *Sprint*—that an assignee of a legal claim has standing even if the assignee will transmit any recovery to the assignor—is compatible with other cases in which we have examined the contours of a valid assignment. *See, e.g.*, *Physicians Health Servs. of Conn., Inc.*, 287 F.3d at 118 (requiring that the "remedies being sought . . . flow to the [named plaintiff] as assignee," but not addressing how the assignee has contracted to dispose of those remedies after the lawsuit).

[8] We have recently considered a roughly analogous assignment relationship—that between a *qui tam* relator and the United States. *See U.S. ex rel. Eisenstein v. City of New York*, No. 06-3329-cv, —F.3d—, 2008 WL 3840447, *3 (2d Cir. 2008) (distinguishing the role of a relator as "the person responsible for prosecuting the action" from that of the United States as the real party-in-interest which "under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." (citation and internal quotation marks omitted)).

11

enjoys the authority to make some decisions concerning litigation, it does not have an ownership stake in any claims its clients might pursue against defendants. *See Advanced Magnetics*, 106 F.3d at 17. On the face of the complaint, Huff's only interest in this litigation as an attorney-in-fact is the recovery of its legal fees, which are a "byproduct of the suit itself" and cannot serve as a basis for Article III standing. *See Vermont Agency of Natural Res.*, 529 U.S. at 772-73 (2000) (internal quotation marks omitted); *see also Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) (holding that an interest in attorney's fees is insufficient for standing purposes).

Huff argues that it qualifies for a prudential exception to the injury-in-fact requirement because of its authority to make investment decisions on behalf of its clients. *See* Appellee's Br. at 16, 42. There are, indeed, a few well-recognized, prudential exceptions to the "injury-in-fact" requirement. These exceptions permit third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (in an opinion concerning whether criminal defense attorneys could pursue certain claims on behalf of their clients, observing that generally a party seeking third-party standing must demonstrate a "close relationship with the person who possesses the right" and that the possessor would face a "hindrance" to protecting his own interest); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005) ("[A] plaintiff seeking third-party standing in federal court must . . . demonstrat[e] a close relation to the injured third party and a hindrance to that party's ability to protect its own interests.") (internal quotation marks omitted). In this vein, courts historically have permitted "[t]rustees [to] bring suits to benefit their trusts; guardians ad litem [to] bring suits to benefit their wards; receivers [to] bring suit to benefit their receiverships; assignees in bankruptcy [to] bring suit to benefit bankrupt estates; [and] executors [to] bring suit to benefit testator estates." *Sprint*, 554 U.S. —, 128 S. Ct. at 2543; *see also Smith v. Org. of Foster Families for Equality & Reform*, 431 U.S. 816, 841 n.44 (1977) (recognizing third-party standing for foster

12

parents to raise claims on behalf of foster children).

We reject Huff's assertion of a prudential exception based on "investment manager standing." *See* Appellee's Br. at 22. First, the investment advisor-client relationship is not the type of close relationship courts have recognized as creating a "prudential exception" to the third-party standing rules. *See Kowalski*, 543 U.S. at 130 (discussing specific examples of third-party standing). Second, Huff has failed to demonstrate that, absent a recognition of its standing claim, there is a "hindrance" to the Beneficial Owners' ability to protect their own interests. *Id.* Rather, the Beneficial Owners are relatively sophisticated parties with a demonstrated capacity to protect their own interests in the absence of Huff's intervention.[9] Indeed, several of Huff's clients have filed parallel individual suits in the Adelphia litigation, and others have proceeded as part of a class action pursuing similar claims. *See ante*, n.1. Therefore, Huff does not qualify for a prudential exception to the "injury-in-fact" requirement.

Finally, Huff posits in its briefs, but not in its complaint, that it satisfies the "injury-in-fact" requirement because it has suffered two injuries stemming from its capacity as investment advisor. First, Huff asserts that its "reputation [was] sullied" as a result of the decision to invest in Adelphia bonds for its clients. Second, Huff suggests that it has suffered an "informational injury" as a result of its reliance on the untruthful information provided by Aldelphia when Huff purchased Aldelphia securities for its clients. Huff contends that the provision of untruthful information by defendants violated its "right" under the relevant statutes "to receive truthful and accurate information about the publicly-traded securities [it] purchase[d] in the exercise of [its] fiduciary duties" and impaired its

---

[9] Huff notes that some of the causes of action alleged have a so-called "eyeball reliance" requirement, which requires that the plaintiff personally have read and relied on the misstatements. Because Huff, and not its clients, "eye-balled"—that is, received and relied on—the Adelphia information, its clients would be precluded from bringing suit because the clients did not rely on the fraudulent information themselves. We take no view on whether, in these circumstances, Huff's clients would be precluded from suit for these violations because the issue is not before us.

13

performance as an investment advisor.[10]

However, Huff has brought this suit on behalf of its clients, not itself. The remedies sought in the complaint—principally money damages associated with the losses suffered by Huff's clients—would not redress either the alleged injury to Huff's reputation or its "informational injury." *See Vermont Agency of Natural Res.*, 529 U.S. at 772 ("The interest [asserted for standing purposes] must consist of obtaining compensation for, or preventing, the violation of a legally protected right."); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court."). Accordingly, these alleged injuries are not sufficient to confer standing on Huff.

## CONCLUSION

To summarize:

1. Huff lacks constitutional standing to bring suit for violations of the federal securities laws in its own name but on behalf of its clients, the beneficial owners of the relevant securities.

2. Huff has not demonstrated an "injury-in-fact" because it does not have legal title or ownership of its clients' claims against Adelphia.

3. Huff's status as both an attorney-in-fact for litigation purposes and an investment advisor with unfettered discretion over its clients' investment decisions does not confer on Huff Article III standing to sue in a representative capacity on its clients' behalf.

The judgment of the District Court is therefore reversed, and the cause is remanded to the District Court for proceedings consistent with this opinion.

---

[10] The allegation that Huff itself sustained an injury first arose in Huff's opposition to the motion to dismiss. We express no view as to whether an injury to Huff's reputation as an investor or an "informational injury"—*i.e.*, a harm stemming from an entity's alleged withholding of truthful information, *see* Appellee's Br. at 32—constitute cognizable claims, had they been properly pleaded.